FIERMAN, ETC. *v.* BOTT.

[No. 20,365. Filed February 10, 1966. Rehearing denied September 29, 1966.]

*Benjamin Piser*, of South Bend, for appellant.

*Gerald A. Kamm*, and *Doran, Manion, Boynton & Kamm*, of South Bend, for appellee.

CARSON, J.—This appeal comes to us from the St. Joseph Superior Court Number 1. The action below was tried on the issues raised by the plaintiff-appellee's amended complaint

which alleged an automobile accident occurred between a car owned by the defendant and operated by one Joseph LaBadie and the car in which plaintiff was riding as a guest passenger. The complaint alleges in substance that the defendant's vehicle entered an intersection through a stop sign and struck the side of the vehicle in which the plaintiff was riding, producing bodily injuries and resulting in medical and hospital expenses. To the plaintiff's complaint the defendant A. L. Fierman, appellant herein, filed an answer under rule 1-3 that he was without information with reference to paragraphs 1 through 7 of the plaintiff's complaint and a further paragraph of answer affirmatively denying that he was engaged in business in the State of Indiana.

The case was tried by jury which resulted in a verdict in the amount of $1000.00 on which the court rendered consistent judgment.

During the course of the trial and at the conclusion of the plaintiff's evidence the defendant filed a motion for a preemptory instruction and directed verdict which was denied by the court and again at the close of the evidence the appellant-defendant filed a motion for directed verdict with a preemptory instruction which was again denied by the court.

The appellant then filed a motion for a new trial setting up four grounds as follows:

"The defendant, A. L. Fierman d/b/a Fierman Motors, moves for a new trial herein on each of the following grounds:

"1. The verdict of the jury is not sustained by sufficient evidence and is contrary to law.

"2. The Court erred in refusing to give the defendant's tendered instruction No. 1 directing a verdict for the defendant, which instruction was tendered at the close of the plaintiff's case.

"3. The Court erred in refusing to give the defendant's tendered instruction No. 2 directing a verdict for the defendant, which instruction was tendered at the close of the entire case.

"4. The Court erred in giving the Court's instruction No. 9 and the plaintiff's tendered instruction No. 8."

An examination of the argument portion of appellant's brief indicates that ground number 4 was not supported by cogent argument and application of authorities and the same is therefore waived.

After the filing of the appellant's brief the appellee filed a motion to dismiss or affirm and a brief in support thereof. The Court, through the Chief Justice denied the motion to dismiss but did not rule on the motion to affirm. This matter now being before us, fully briefed on the merits, the motion to affirm is denied.

The appellant's assignment of error number 1 that the verdict of the jury is not sustained by sufficient evidence and is contrary to law presents the question necessary for our consideration of this appeal. Since the evidence was in conflict and the cause was submitted to the jury we pass the question of the sufficiency of the evidence. We do not weigh the evidence and this matter was solely for the determination of the trier of the fact. That portion of the assignment that the verdict is contrary to law does however present a question for our determination.

Under the ruling of *Pokraka* v. *Lummus Co.* (1952), 230 Ind. 523, 104 N. E. 2d 669, it is necessary for us to examine the evidence favorable to the appellee together with all reasonable inferences to be drawn therefrom to determine whether or not reasonable minded men should have arrived at a contrary result. For the purpose of clarifying this opinion we include herein all of the evidence given on behalf of the plaintiff from which an inference could be drawn establishing the relationship of agency:

CROSS-EXAMINATION OF A. L. FIERMAN

"Q. Will you turn to that page, please. I think you will find it to be forty-one, beg your pardon. Page forty-eight and when you turn to page forty-eight tell the Court and Jury what you found there?

"A. Northern Indiana Repossession Bureau, Fifty Mile Radius.

"Q. Of what?

"A. Walkerton, Indiana, Route 2, Box 670. Tom M. Wolfe, Owner; Joe LaBadie, Manager; *Pone* [sic.]46-F-12.

"Q. Thank you, sir. When you read this what then did you do?

"A. I called Mr. LaBadie on the phone and talked to Mr. LaBadie and asked him to repossess the car or get the money.

"Q. Did you tell him anything else?

"A. Nothing.

"Q. Did you tell him what route to take to get the car?

"A. No, sir.

"Q. Did you tell him when to bring the car?

"A. No, sir.

"Q. To you?

"A. No, sir.

"Q. What arrangements did you make by way of payment?

"A. They get $35 for the initial and eight cents a mile.

"Q. And this is the arrangement that you made?

"A. Yes, sir.

"Q. Did you have any control of Mr. LaBadie's work in regard to the repossession of this car?

"A. No, sir.

"Q. Had you at any time engaged his services before?

"A. No, sir."

. . . . .

"Q. Did you at any time have this man LaBadie on your payroll?

"A. No, sir.

"Q. Did you withhold any taxes of any kind for him?

"A. No, sir.

"Q. Now, you stated that Mr. LaBadie telephoned you after the accident, is that correct?

"A. Yes, sir.

"Q. Substantially without necessarily giving the words, word for word, what was said by him and what was said by you?

"A. He told me there had been an accident and that the car had been damaged and that no matter what he would buy the car if I would sell it to him like it was.

"Q. Did he say anything to you with reference to this accident and your liability thereon?

"A. No. sir."

. . . . .

"Q. Did you then arrange with the late Mr. LaBadie to sell the car to him?

"A. Yes, sir.

"Q. And after making those arrangements you then sent whatever papers you had from Texas, is that right?

"A. Yes, sir.

"Q. Do you have any knowledge, sir, about the occurrence, that is, about the accident itself?

"A. No, sir.

"Q. I would like, if the Court please, to introduce in evidence Defendant Fierman's Exhibit 'A.'

"MR. MINCZSKI: No objections.

"MR. KAMM: No objections.

"THE COURT: It will be admitted without objections.

"(Defendant Fierman's Exhibit 'A' published to the Jury)

"Q. Now, sir, would you or would I be correct in stating that the repossession of this automobile was left solely to the discretion of Mr. LaBadie?

"A. Yes, sir.

"Q. It is a fact, is it not, sir, that Mr. LaBadie was driving the automobile in the act of repossessing it after he had picked it up from there?

"A. Yes, sir.

"Q. And when this accident occurred?

"A. Yes, sir.

"Q. Would I be correct in stating, sir, that your arrangement with LaBadie was simply to get that automobile or the money for it?

"A. Yes, sir.

"Q. No other arrangements?

"A. No, sir.

"Q. You had no other deals with him?

"A. No, sir.

"Q. Before or after?

"A. No, sir.

"Q. That is all."

RE-DIRECT EXAMINATION BY MR. KAMM:

"Q. Mr. Fierman, you authorized him to either pick this up or pick the money, right?

"A. Yes, sir.

"Q. Did you tell him anything about any time limit in which he could do this?

"A. No."

DIRECT EXAMINATION OF WILLIS BOTT:

"Q. Which side of the road were you traveling on immediately prior to this incident?

"A. I was on the right-hand-side of the road.

"Q. The north half of the road?

"A. Yes."

CROSS-EXAMINATION OF WILLIS BOTT:

"Q. Mr. Fierman wasn't there, was he?

"A. No.

"Q. You had no knowledge of Mr. Fierman at the time, did you?

"A. At that instance; no.

"Q. Was there any representation made by Mr. LaBadie with reference to Mr. Fierman?

"A. No, sir."

We feel that the evidence establishes that the defendant-appellant herein contracted with an independent contractor.

The evidence conflicts in no respect concerning the engagement of the contractor or his uncontrolled mission of repossession. Applying the tests of *Pokraka* v. *Lummus Co.* supra, to the above evidence we conclude that the verdict of the jury was contrary to law and that this cause should be reversed and the motion for new trial sustained.

Judgment reversed with instructions to the trial court to sustain the motion for new trial.

Prime, C.J., Faulconer and Wickens, JJ., concur.

NOTE.—Reported in 213 N. E. 2d 819.